Lamport *v.* Beeman.

[MONROE GENERAL TERM, September 2, 1861. *Smith, Johnson* and *Knox,* Justices.]

———————◇———————

## LAMPORT and ALLEN, executors &c. *vs.* BEEMAN, adm'r &c. and others.

Heirs or devisees can compel an executor or administrator to pay the purchase money remaining unpaid upon lands purchased by the testator or intestate and held by him under a contract, at the time of his death, out of the assets in the hands of such executor or administrator.

The contract debt, for the purchase money, is not a mortgage, within the intent and meaning of the statute making mortgages given by an ancestor or testator a charge upon the land descending to an heir or passing to a devisee, to be paid by the heir or devisee, unless there be an express direction to the contrary in the will. (1 *R. S.* 549, § 4.)

The provision of the statute is confined exclusively to lands descending or passing by devise, subject to a mortgage " *executed* by any ancestor or

testator." It refers to no other charge or incumbrance whatever, legal or equitable.

Where an executrix agreed to pay all the debts of the testator, if her co-executors would give up the whole estate to her, to which they assented, and she thereupon took the assets and paid the debts; it was *held* that the agreement was founded on a good consideration, and was binding upon her; and that the same having been fully executed, on her part, her administrator, after her death, could not gainsay it, nor claim any thing from it, as against any person interested in the remainder.

APPEAL by the defendant Beeman from a judgment entered at a special term, upon the judgment of a referee. On or about the 15th of April, 1835, Consider Lucas, of Canandaigua, Ontario county, died, leaving a will by which he directed his debts and funeral expenses to be paid, in preference to any devise or legacy therein; then bequeathed to his brother Benjamin $50, and his sister Kesiah $25; and next gave to his widow, for her support and benefit during her life, the use of the residue of his personal and real estate and property. The value of the said personal and real estate and property, at the death of his widow, was given, one-half to the treasurer of the Baptist General Convention of the United States for Foreign Missions, for the circulation of the bible in foreign countries; one-fourth to the treasurer of the Baptist Missionary Convention of the State of New York; the other fourth to the trustees of the First Baptist Society of the village of Canandaigua. The plaintiffs and the said widow were made executors and executrix of the will. The testator left some personal property, and a contract for the conveyance, to him, of a small parcel of real estate, by Theophilus Short, on which contract there was unpaid about $700; all of which property went into the possession of the widow, under an agreement between her and the plaintiffs, whereby, in consideration thereof, she agreed to pay all the debts of the testator, including the balance owing on the land contract. The widow paid all the debts; the payments made on the land contract were made with money furnished by her; and some of the money arose from the rents of the

real estate embraced in the contract.   This action was brought
by the plaintiffs as surviving executors of Consider Lucas, to
have a sale of the said real estate ; for a construction of the
will ; and for directions as to the disposition of the proceeds
of the sale.   Some of the defendants answered ; and the ac-
tion was referred to a referee, before whom it was tried.   The
referee reported that the trustees of the First Baptist Society
of Canandaigua was an unincorporated religious association ;
that the Baptist Missionary Convention of the State of New
York was an incorporated religious association, having no
right by its charter to take by devise ; that the general con-
vention of the Baptist denomination, in the United States,
&c. was incorporated under the laws of Pennsylvania, and
authorized by its charter to take real estate by devise ; and
he adjudged that the first named society was entitled to one-
fourth of the said real estate ; the last named association to
one-half ; and the heirs at law of the testator to the remain-
ing fourth.   Costs were allowed to the plaintiffs, and also to
the defendants, and a sale of the premises was directed.   At
this stage of the action the appellant Beeman was admitted
a party defendant, who answered, setting up a claim that the
estate of the widow be reimbursed what she had paid out of
her own means and beyond her proper proportion to pay ; and
the case was recommitted to the referee for further hearing
and decision.   The referee rejected the claim, and judgment
was rendered in accordance with the first report ; and several
exceptions were taken by the appellant.

*T. R. Strong,* for the appellant.   I. The testator, Consider
Lucas, was in equity the owner of the land under the land
contract, subject to a lien of the vendor or his representatives
for the unpaid purchase money.   Had he died intestate, the
land would have descended to his heirs with the lien upon it,
By the will it passed to Mrs. Lucas, to whom it was devised
for life, subject to the lien.   (*Johnson* v. *Corbett,* 11 *Paige,*

265. *Champion* v. *Brown*, 6 *John. Ch.* 398. *Livingston* v. *Newkirk*, 3 *id.* 312.)

II. Mrs. Lucas, as between her and the owners of the land subject to her life estate, was bound to keep down the interest on the sum unpaid on the contract, during her life, but was not bound to pay any of the principal. (4 *Kent's Com.* 74. *Bell* v. *The Mayor &c.*, 10 *Paige*, 71.)

III. The land contract was in the nature of a mortgage on the lands, and there being no express direction in the will that the amount owing be otherwise paid, the devisees and heirs were bound to pay the same, in the proportion of their interests, under the provisions of the statutes. (1 *R. S.* 749, § 4. *Halsey* v. *Reed*, 9 *Paige*, 446, 454.) The application of this statute to cases of land held by contract, descended or devised, does not seem to have been considered in some of the cases.

IV. If the last preceding point be not tenable, then it is submitted that, by the will of the testator, the personal and real estate was made a *common fund* for the payment of the debts and funeral expenses—the land being equally liable with the personal property. By the first item of the will these debts and expenses were to be paid in preference to any "*devise* or legacy." Then, after two small bequests of $50 and $25, by the fourth item of the will, was given to the widow the use of the residue of all the "*personal and real estate and property.*" The gift to the societies, at the death of the widow, is of what "the *personal* and real estate and property *shall then be worth.*" (*Lewis* v. *Darling*, 16 *How. U. S. Rep.* 1. *Tracy* v. *Tracy*, 15 *Barb.* 503. *Reynolds* v. *Reynolds' Ex'rs*, 16 *N. Y. Rep.* 257.)

V. The personal property and a portion of the rents having, as found by the referee, been applied to pay the principal of the debts and expenses of the testator, including the debts for the land, to the extent the widow thereby parted with the use of the property beyond her legal obligation to do so, she was subrogated to the rights of the creditor on the

Lamport *v.* Beeman.

land contract, and had a lien on the land for her reimbursement. (4 *Kent's Com.* 74. *Smith* v. *Wyckoff,* 11 *Paige,* 49. *Wilkes* v. *Harper,* 2 *Barb. Ch.* 338. *Mathews* v. *Aikin,* 1 *Comst.* 595.) In *Bisset,* on estates for life, it is said (*p.* 209,) "When a tenant for life pays off a charge upon the estate, this act will, *prima facie,* and without any thing being said about it on either side, be intended to make him 'a creditor, and the charge will continue for the benefit of his personal representatives." (*See also* 273 ; *Countess of Shrewsbury* v. *Earl of Shrewsbury,* 1 *Vesey, jun.* 227.) This debt to the widow and lien therefor passed to her representatives as part of her personal estate. (*Mollan* v. *Griffith,* 3 *Paige,* 402, *and cases there cited.*)

VI. Especially as between the widow and the heirs taking the real estate by descent, she had a lien on the land to the extent she applied her interest in the personal property, to pay the principal of debts. (*Mollan* v. *Griffith,* 3 *Paige,* 402.) All the devises to the societies were void.

VII. Certainly to the extent the rents of the land were appropriated, by the widow to pay debts, she was subrogated to the lien of the creditor in the land contract, which passed to her administrator. The report of the referee shows that a part of the rents was used to pay the land debts.

VIII. The agreement between the widow and her associate administrators, mentioned in the report of the referee, was a *nudum pactum* and void ; but if otherwise, it did not affect the question of her right to subrogation and a lien as aforesaid.

IX. The judgment for a sale of the land is without authority and void ; and the several exceptions to the report of the referee are well taken.

*E. A. Hopkins,* for the respondents. I. The referee did not err in deciding that the personal estate of the testator was the primary fund for the payment of the debt to Theophilus Short. The testator in his will, specifically directing all

the debts to be paid, included, and intended to include, the debt to Short, and appointing executors to execute the will containing such a direction, was exactly tantamount to directing the executors to pay the debt to Short; and hence, under the will, the debt to Short was a debt for the executors to pay, and not for the heirs or devisees. In 2 *R. S.* 156, § 4, *4th ed.*, the phrase "unless there be an express direction in the will of the testator that such mortgage be otherwise paid," signifies *otherwise than by the heir or devisee.* This will does direct the debt to Short to be otherwise paid. It requires it to be paid before the heirs or the devisees take any thing, and that they take only the residue. Hence, even if the debt to Short were in fact a mortgage within the meaning of the statute, (which it is not,) it would not, under this will, be primarily chargeable on the heirs or devisees. (3 *Paige,* 403, 405.) Being payable by the executors, it was to be paid out of the personal property. (2 *R. S.* 272, 273, §§ 27, 28, *4th ed.* *Id.* 285, §§ 1, 2.)

II. If the real estate were the primary fund for the payment of the debt to Short, that fact could legally afford no relief to Beeman as administrator of the widow. As to the real and the personal estate, whichever was the primary fund for the payment of the debt to Short, certain it is, under this will, that it was to be paid before anybody should take any thing, either as heir, or devisee, or legatee. By the terms of the will, nobody was to take any thing till the debts should be paid, and then, only the residue. In this view, the executors under the order of the surrogate should pay the debt to Short by leasing the property, if in that way the debt could be paid, as it clearly could. When the use of the real estate had thus paid this prior lien, then, and not till then, the widow's right of use for life as devisee would attach. We had no right to it till the widow should have done using it; so she had no right to it till the prior lien was paid. After that lien should be paid, she was devisee of the use of what was left for life, and we of the remainder. As

Lamport v. Beeman.

to the residue of personal and real estate, she was both the legatee and devisee of the use for life; we were both legatees and devisees of what was left. She might spend of it more or less; that was our ill fortune or good fortune, as the case might be. Her good husbandry of the property, real or personal, could give to her heirs, at her death, no right to the property.

III. The referee did not err in deciding that the agreement between the plaintiffs and the widow was a valid agreement. It was certainly a valid agreement if the debt to Theophilus Short was, under the will, chargeable primarily on the personal estate of Consider Lucas. But if that debt was to be paid out of the real estate, still it was, under the will, to be paid by the executors; hence this agreement between the co-executors, by which she, one of them, was to pay this debt, was a valid agreement. Or, if it was a question between the co-executors, the plaintiffs and herself, whether that debt should be paid out of the personal estate or out of the real estate, yet it was competent for them to settle that question by such an agreement; and so the agreement is a valid adjustment of the question.

IV. Section 4 of the title, "Miscellaneous provisions of a general nature," (2 R. S. 156, 4th ed.) relates to a proper mortgage, in form and in fact, not to liens like the one in question. This debt to Short was a lien on the land, and so far it partook of the nature of a mortgage; but it was not a mortgage in fact, nor even in effect. A judgment in a court of record, docketed in the county, is a lien on land, and so far partakes of the nature of a mortgage; yet it is not a mortgage in fact, nor even in effect.

V. Since the personal property was sufficient to pay all the legacies and all the debts, including the debt to Short, such payment of all could furnish no cause for controversy between legatees and devisees, or between executors and heirs or otherwise. The personal property was clearly sufficient to pay not only all the legacies, but all the debts. It is only

where the personal property is insufficient to pay all the leg-acies and all the debts that a legatee may be subrogated to a creditor having a lien on the real estate of the decedent, when such creditor has been paid out of the personal estate. There being sufficient personal property to pay all the legacies and all the debts, including those that are liens on the real estate of the decedent, the devisees or heirs cannot complain that those liens are paid by the executors, and the legatees cannot complain, for they have received their legacies.

VI. The widow had, under her contract with her co-executors, so treated the estate as to make it impossible for her representatives to show what portion of the debt to Short was paid out of the personal property or out of the rents of the real estate, or when the same was paid. She is dead. Her co-executors only knew that she paid some portion of the debt to Short out of the rents of the real estate, but what portion they did not know; what portion the referee cannot and does not state, nor can he nor does he state the time.

VII. If the will had not specifically directed the payment of all the testator's debts in the first instance, even then, such are its remaining terms, that the payment of the debt to Short, as made by the widow, gave neither her nor her administrator any claim on the estate. In that case, suppose she was bound for her life to keep down the interest on the debt to Short, and suppose this is all she had done during her life, then she would have left to the subsequent legatees and devisees so much the greater remainder. She paid from the estate for which she had the use for life, and the successful defendants had the remainder. So far as she took of the estate or its use to pay the principal of the debt to Short, so far she diminished that remainder. So far as she took of the rent of the real estate to pay upon that debt, instead of living upon such rent, so far she had to draw further on the personal estate for her use and support. While she was legatee and devisee of the use of the estate for her life, she was both by the terms of the will and of her agreement with her

Lamport *v*. Beeman.

co-executors, a trustee of the remainder, and the successful defendants were the *"cestuis que trust."* Hence, while she had the right of use for her support during her life, she was bound, subject, to that use, to husband and preserve the estate for her *cestuis que trust.* So far as she took of the rents of the real estate to pay off the debt to Short, so far she diminished that source of her support, as provided by the will. And just so much further she must needs draw on the personal property for her support; and to the same extent she diminished the remainder. Her paying to Short by such means was of no benefit to the remaindermen. Had that debt remained unpaid by her, that remainder had been just so much larger. This point supposes she was not bound to pay that debt, but that it belonged to the remaindermen to pay. She could not take of the use of the estate provided by the will for her support and pay this debt with it, then draw upon the principal of the estate so much the more for her support, and then treat that debt as if she had paid it properly out of her own separate independent estate. Trustee as she was, in her character as executrix; trustee as she was, by the express terms of the will; trustee as she was, by her agreement with her co-executors, if she had so designed or so attempted, she had been guilty of a gross attempt to violate her trust duty.

*By the Court*, JOHNSON, J. This case, so far as the defendant Beeman is concerned, must turn wholly, I think, upon the question whether it is incumbent upon the executor, or the devisee, to pay the purchase money remaining unpaid upon lands purchased by the testator and held by him by contract at the time of his death. It has been repeatedly, and I believe uniformly, held that the heir or devisee could compel the executors or administrators to pay off such a debt, for his benefit, out of the assets in the hands of the latter. (*Dart on Vend. and Purch.* 125. *Broome* v. *Monck*, 10 *Vesey*, 597. *Livingston* v. *Newkirk*, 3 *John. Ch.*

312.  *Cogswell* v. *Cogswell,* 2 *Edw.* 231.  *Johnson* v. *Corbett,* 11 *Paige,* 265.)  The rule was the same in respect to lands incumbered by mortgage.  But in regard to mortgages the rule has been changed by our statute, and the mortgage made a charge upon the land exclusively, to be paid by the heir or devisee, unless there be an express direction to the contrary in the will.  (1 *R. S.* 749, § 4.)

It is argued on the part of the defendant that the contract debt, for the purchase money, is in the nature of a mortgage, and comes within the spirit and meaning of the statute.  But whatever resemblance it may bear in equity to a mortgage, it is certainly not a mortgage within the intent and meaning of the statute; and the provision of the statute is confined exclusively to lands descending, or passing by devise, subject to a mortgage " *executed* by any ancestor or testator."  It refers to no other charge or incumbrance whatever, legal or equitable.  In all other respects the rule remains as it was before.

.It is entirely clear that this debt for the land was not by the will charged upon the real estate.  The language of the will is clear and explicit.  " All debts which I shall justly owe shall be paid in preference to any devise or legacy herein contained."

There is no doubt that the personal estate was abundantly sufficient for the payment of all the debts of the testator, including this debt for the land.  And it can make no difference, in this case, that the life tenant used a small portion of the rents to pay that debt.  She had the whole personal estate in her own charge and right, and it is not shown, or pretended, that it was insufficient, had it been so applied, to pay and satisfy all the debts of the testator.

But, had this been expressly shown, I do not see what claim her administrators could have.  She agreed expressly to pay all the debts, if her co-executors would give up the whole estate to her.  To this they assented, and she took the assets, and paid the debts, according to her agreement.

It is suggested, rather than claimed, that this agreement was not binding upon her. I do not see why it was not. It was founded in a good consideration, as between her and her associates, who were acting for the interests of all having any claims upon the estate. At all events, the agreement was fully executed, on her part, and I do not see how her representative can now gainsay it, or claim any thing from it, as against any other person interested in the remainder.

The case was properly disposed of by the referee, and the judgment must be affirmed, with costs against the appellant.

