that my conclusion in this matter in no wise overrules the opinion of Mr. Jenks. On the contrary, I hold that he was right, on the facts before him.

Under the charter of this city (title 3, § 1), heads of departments may appoint and remove their clerks, assistants, and other subordinates, "and fix their salaries." By section 18 of title 2, the board of estimate fixes a certain amount to be raised for the use of each of the several departments for the ensuing year. If the board sees fit to itemize the account, the head of department is not bound to make his salary list and expenses conform to such items, but each head must see that the total expense of his department does not exceed the amount fixed by the board of estimate. There is no time named in the charter when the head of department shall fix the salaries for his clerks and subordinates. I see no legal reason why the president of the department of assessment may not increase the salaries of his clerks during the months of July and August, or during any other month of the year, provided he keeps the expenses of his office for the year within the amount allowed by the board of estimate. It is clear that the work of copying the tax rolls should be performed by men who are familiar with books of that description, and who can be trusted. If this application should be denied, I infer that the work for the coming year will have to be performed by extra clerks, who are appointed for a period of only 30 or 60 days, and who have had no experience in work of that kind. It might result, if the rolls are copied by an unskilled force of clerks, that the tax levy, or a portion of it, for the year 1894, would be in peril. The rule of law that an employé of the city who receives a fixed salary cannot be paid for extra services has no application to the facts of this case. The president of the assessment department had the power to and did increase the salaries of the clerks employed in copying the tax rolls. He determined that, for such employment, they should be paid at the rate of 10 cents per folio, and that their salaries should be increased by the amount they earned while so employed. The motion for a writ of peremptory mandamus is granted, without costs.

---

(8 Misc. Rep. 102.)

### In re KENE'S ESTATE.

((Surrogate's Court, Westchester County. April, 1894.)

TRANSFER TAX—REAL ESTATE SUBJECT TO MORTGAGE.
   Under 1 Rev. St. p. 749, § 4, providing that an heir or devisee shall, out of his own property, satisfy any mortgage to which the land descended or devised is subject, unless the will directs otherwise, the personal estate of a testator who devised land subject to mortgage is not liable for the mortgage debt, to the exoneration of the land, unless the will so provides, and the amount of the mortgage will therefore be deducted from the value of the land in assessing the transfer tax.

Appeal from order of appraiser.

Proceeding to appraise certain real estate devised by John F. Kene to L. F. Hopkins for assessment under the collateral inheri-

tance tax law. The appraiser fixed the value of the premises at $1,509.43, and the assessment was made accordingly. Devisee objected to the assessment, on the ground that the premises were subject to a mortgage for $1,100, and from the decree of assessment she appeals. Reversed.

C. E. Kene, for appellant.

Edward Hassett, for respondent.

COFFIN, S. It is claimed by the counsel for the respondent that the bond accompanying the mortgage was an obligation of the deceased which his executors should pay, they having sufficient funds of the estate for that purpose. If this view were correct, the mortgage would be satisfied out of the personal estate, and the devisee of the house and lot would take it free therefrom, and so be liable to the payment of the tax. In this he seems to be in error. Such was the rule in England, but it was changed in this state as early as 1786, and is continued to the present day. By section 4, p. 749, 1 Rev. St., now in force, it is provided that "whenever any real estate, subject to a mortgage executed by any ancestor or testator, shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, without resorting to the executor or administrator of his ancestor, unless there be express direction in the will of such testator that such mortgage be otherwise paid." See revisers' note to the section. The will gave no direction for the payment of the mortgage. The word "ancestor," in Termes De La Ley, is said, in a forensic sense, to be more properly applied to the possessor of an estate than to an ancestor of a family; and in this sense it is frequently, and indeed most generally, employed in books which treat of descents of real estate, and in statutes relating to that subject. Burrill, in his Law Dictionary, defined it to be "one who has gone before or preceded in the seisin or possession of real estate." Here the devisee takes it cum onere. Taylor v. Wendel, 4 Bradf. Sur. 324; 4 Kent, Comm. 420. In a proceeding in surrogates' courts to sell real estate for the payment of the debts of a decedent, on which there is a mortgage, the bond which usually accompanies it is never treated as a debt to be proven. As the value of the equity in the premises is found to be less than $500, it is exempt from taxation, and the decree fixing the tax is therefore reversed, with costs. Decree reversed, with costs.

---

(8 Misc. Rep. 140.)

In re RICHARDSON et al.

(Surrogate's Court, Westchester County. April, 1894.)

EXECUTORS AND ADMINISTRATORS—REMOVAL.

    A person named in a will as executor, but who did not qualify or receive letters as such, is not an executor, and an order cannot be granted removing him.

Application by Anna P. R. Kirkland to revoke letters of administration with the will annexed of Thomas C. Richardson, issued to