In the Matter of the Estate of PATRICK J. FOGARTY, Deceased.

Surrogate's Court, Monroe County, November 1, 1937.

*James E. Cuff*, for the executor-claimant.

*John C. Little*, special guardian.

FEELY, S. When this testator in 1932, after having given merely the common direction, in general terms, to pay all his just debts and funeral expenses, then expressed his last will also to be that a specified parcel of his land, on which there was a mortgage

that he had assumed and agreed to pay off as part of its purchase price, be given to a person other than those to whom his movable property had been bequeathed, he did not make it clear on the face of the will what, if anything, he meant should be done in respect of the debt secured by that mortgage. The devisee claims that this mortgage, not having been one " executed by " the testator, within the meaning of this phrase in section 250 of the Real Property Law, should be paid by the executor out of the personal property.

There could be no doubt that the merely general direction given by a testator to pay first all his debts did not include a debt which he himself had not incurred and did not personally owe — as where he had taken title to the land merely " subject " to the mortgage, even though the mortgage contained, as most mortgages now commonly do, an express covenant to pay the debt represented by the bond or note to secure which the mortgage was originally given. (See *Biedka* v. *Ashkenas*, 119 Misc. 647.) Such a covenant to pay must be express; for in its absence we cannot infer from the mere pledge, mortgage or lien, a promise to pay the sum intended to be secured (Real Prop. Law, § 249); and the same statute confined the remedies of the mortgagee in such case to the property mentioned in the mortgage; as if the mortgage itself, though legally only a security by collateral lien, were really " the principal thing " as it is " ordinarily thought " to be (*Cochrane* v. *Hawver*, 54 Hun, 556); although the result might better have been accounted for on the equity rule on the application of assets.

So, it has been held that even where the testator did assume and agree to pay the mortgage debt, still if his grantor was not himself personally liable to pay it, the testator's promise to this grantor was one that had no legal basis; and the mortgagee, not having been a party to the assumption agreement, could not take advantage of the grantee-testator's promise to his grantor to pay off the mortgage debt. (*Pratt* v. *Fay*, 97 Misc. 434. See, also, *Ross* v. *Davis*, 138 id. 863.)

Where, however, the testator, before he made his last will, had unquestionably incurred the debt, secured by mortgage on the land devised, the common-law rule (19 A. L. R. 1421) was that the devisee of the land could resort to the movable property of the testator, as the primary fund, for the purpose of having it applied to relieve him of the burden of that debt, by paying it along with all other debts of the testator. Another reason for so ruling, aside from the long- and well-established rule of holding the personalty primarily liable for testator's debts, is that the personal estate of the decedent had been saved from depletion by reason of the giving of the mortgage.

However, the Legislature is said to have presumed that testators generally meant otherwise, and has enacted that "where real property, subject to a mortgage *executed* by any ancestor or testator, descends to an heir, or passes to a devisee, such heir or devisee must satisfy and discharge the mortgage out of his own property, without resorting to the executor or administrator of his ancestor, or testator, unless there be an express direction in the will of such testator, that the mortgage be otherwise paid." (Real Prop. Law, § 250.) This section was held in 1861 not to apply to a land contract (*Lamport* v. *Beeman*, 34 Barb. 239. See, also, *Wright* v. *Holbrook*, 32 N. Y. 587, 590, and 3 L. R. A. [N. S.] 902); and this ruling was among the minor matters that were called to the attention of the so-called Foley Commission in its later sessions. Eventually, in 1937, this section was amended by chapter 75 to apply prospectively as of September 1, 1937, so as to include not only a vendee's liability for a mortgage balance of the purchase price, but also "any other charge" or lien. Similar enactments had already been made elsewhere. (See 11 R. C. L. 162; 3 L. R. A. [N. S.] 898.) Although this amendment does not apply to the case in hand, it indicates the policy of our Legislature also to be to extend greatly the scope of this statute, with the implication that the statute should not be narrowly, nor technically, construed.

In 1894, before the words "or testator" were inserted in the second place where they now appear in this section, the court, in *Matter of Kene* ([1894], 8 Misc. 102), construed this section more liberally than was done in the *Lamport* v. *Beeman* case. In the *Kene* matter it was held that where the devisee was not a relative of the testator, the word "ancestor" in this section should be construed to mean a predecessor in title, rather than in blood, in denying the State's claim that the devisee had the right to resort to the executor or administrator of "his ancestor" to have the mortgaged debt paid off out of the personalty, in order that the land transferred by the devise could be taxed at its clear value.

From the standpoint of construing, it appears to me that the "assumed" mortgage debt falls so clearly within the scope of this section, designed to make the devise carry its own burdens, according to the long- and well-established rule to that effect, that little weight should now be given to the argument for limiting this section to its wording on the ground that it is in derogation of the common law, and that when it used the word "executed" it meant to exclude all other types of debts that were liens on the devised land by way of mortgage.

The facts herein are undisputed. This testator, in two instances before he made his last will, assumed and agreed to pay as part of

the purchase price a mortgage debt already on the land when it was conveyed to him; but in one case he later had the investment refinanced, and then made a new bond and mortgage himself. This concededly was a mortgage "executed by" the testator. In the other case, however, one Ryan in purchasing the land had given a mortgage for $3,300 to one Havens; and thereafter in the deed of conveyance from Ryan to this testator, the latter "assumed and agreed to pay said mortgage according to its terms." The mortgage carried the usual covenant to pay, above mentioned. Testator had contracted to purchase by a writing prepared by his vendor, a layman not skilled in the law, and had there agreed to buy this parcel "subject to" the Havens first mortgage; but the deed carried the assumption aforesaid. This was more than a covenant merely to save harmless the vendor against a mortgage the latter had given, as was the fact in the case of *Duke of Cumberland* v. *Codrington* ([1817] 3 Johns. Ch. 229). The purchase price of the parcel now in question was $6,100, of which testator paid $1,500 in cash, and gave his own bond and second mortgage for $1,300 to his grantor Ryan, and for the balance he assumed and agreed to pay off the $3,300 first mortgage to Havens, as aforesaid. Thereafter testator paid off his second mortgage debt of $1,300 to his grantor, and reduced the principal of the first mortgage debt, by payments to the first mortgagee, to the extent that at the time testator died, there was only $2,000 due to the first mortgagee.

Testator had no understanding with the first mortgagee at the time of the purchase from Ryan. The contract of purchase, however, was a valid one made for the benefit of the first mortgagee; and was not vitiated, as between vendor and vendee, either by any lack of consent, as distinct from immediate privity with the first mortgagee, nor by any such facts as appeared in the case of *Genesee Valley National Bank & Trust Co.* v. *Bolton* (248 App. Div. 530). After the sale had been completed, the first mortgagee allowed the testator time to pay the first and second installments of the principal, without anything being promised for such forbearance that would make a new consideration as between them.

In the extensive briefs filed herein no stress is laid on the fact that the testator gave his own bond and second mortgage to his grantor at the same time that he assumed and agreed to pay the existing mortgage debt to the first mortgagee. In this connection, it might be said that when testator executed his $1,300 mortgage to Ryan, reciting it to be "second and subsequent to" a first mortgage held by Havens — which as part of the same transaction he assumed and agreed to pay Havens — the testator, in effect,

" executed " an obligation of mortgage for the benefit of Havens quite as effectively as if he had subscribed and acknowledged a form of mortgage to Havens similar to his second mortgage then given. At least, the word " execute " should not be limited to the act of subscribing and acknowledging a mortgage form, in preparation for delivery and closing of the entire transaction.

Now, the executor, to whom individually this specific parcel has been devised in general terms, without any reference to the mortgage, argues that this first mortgage was not " executed " by his devisor, and should be paid off out of the personal assets. The special guardian for the infant residuaries argues that in these circumstances the devised land is primarily liable, even if this case were not within the meaning of this section as it read in 1932.

This presents the question whether this section 250 of the Real Property Law, as it stood before the amendment of 1937, applied to a prior grantor's mortgage debt which the testator assumed and agreed to pay as part of the purchase price thereof. There is no claim that there is here any " break in the chain " of assumptions, which would bring the case within the ruling in *Pratt* v. *Fay* (97 Misc. 434, *supra*). No direct ruling in any jurisdiction has been cited by the executor devisee in support of the distinction he claims to exist between an " assumed " mortgage and one " executed " by the testator. On the merits, there does not appear to be any substantial reason for making any such differentiation. Obviously, such an assumed mortgage debt becomes quite as much a personal obligation of the testator as would be any bond secured by a mortgage " executed " by him, although the section never referred to the bond or principal obligation. It uses the word " mortgage " in a broad sense, to signify an obligation including a collateral lien on land.

The statute presumes that had the testator expressed himself more clearly in his last will he probably would have placed the burden of the debt on the devisee; or else he should have expressly directed otherwise, as was done in *Matter of Storey* (134 Misc. 791). There is nothing in the will of this testator, aside from the ineffectual direction, in general terms, to pay his just debts, that indicates any intention on his part other than that which the statute presumes he entertained; nor would it matter had this mortgage debt been created or assumed after the date of the will, June 11, 1932, because for over a century the statutory rule has also been that neither an agreement made by a testator to convey land, nor a charge or incumbrance to secure the payment of money, imposed thereon by a testator after having made his last will devising the same land, shall be deemed a revocation of the prior will; but that the property

devised shall pass under the will, subject to such charge or incumbrance; and in the case of a land contract, subject to the same remedies, in aid of the record title, against the devisees or legatees as might be had by law against the heirs of the testator if the same had descended to them. (Dec. Est. Law, §§ 37, 38.) Those contemporaneous enactments of the Revised Statutes should be read in connection with the provision of the same enactments, now section 250 of the Real Property Law; and altogether these statutes, especially in the present amended form of section 250, manifest an established, consistent policy on the part of this State that seems to be at variance with the distinction urged by the devisee herein.

My conclusion is that this executor devisee is not entitled to have any part of his devisor's estate, real or personal, applied to free him from the obligation to the estate, incurred by the acceptance of the devise, to pay, out of his own means, to the first mortgagee the $2,000 and interest since the devisor's death, due the latter on the first mortgage debt; or else stand to forfeit the land in foreclosure, without any right of recourse to the devisor's estate.

Let the decree of judicial settlement herein be framed in accord with this decision, and be entered.